**REVISED JUNE 15, 2015**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
June 10, 2015
Lyle W. Cayce
Clerk

No. 14-40114

DAVID MCCAIG, Individually and as the Representative of the Estate of Allie Vida McCaig; MARILYN MCCAIG,

Plaintiffs - Appellees

v.

WELLS FARGO BANK (TEXAS), N.A.,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, JONES, and ELROD, Circuit Judges.

REAVLEY, Circuit Judge:

This judgment is based on a jury verdict finding violations of the Texas Debt Collection Act ("TDCA") by Wells Fargo and awarding damages and attorney's fees. Wells Fargo raises numerous issues on appeal. We affirm in large part but vacate the judgment and remand for entry consistent with this opinion.

BACKGROUND

In 2002, Allie Vida McCaig qualified for a mortgage and purchased the home directly behind that of her son and his wife, David and Marilyn McCaig.[1] When Allie died, the McCaigs took over the mortgage payments, but the loan fell into default. Eventually, the McCaigs and Wells Fargo (the loan servicer) entered into settlement and forbearance agreements. While the contracting parties agreed the loan "remain[ed] in Default," Wells Fargo agreed not to foreclose on the property so long as the McCaigs followed a 35-month payment plan. More specifically, the settlement agreement provided:

> the McCaigs are not obligors on the note, and the McCaigs are not personally liable for the Loan Agreement Debt. . . . Wells Fargo has agreed to accept payments from the McCaigs and to give the McCaigs an opportunity to avoid foreclosure of the Property; as long as the McCaigs make the required payments consistent with the Forbearance Agreement and the Loan Agreement.

Wells Fargo also "agreed to waive and forebear" the collection of certain fees and costs "conditioned upon the McCaigs [*sic*] successful completion of, and performance under, this Agreement and the Forbearance Agreement."

The McCaigs adhered to the plan, but Wells Fargo made repeated mistakes in the servicing of the loan. Wells Fargo initiated the foreclosure process, dispatched multiple erroneous notices of default, and posted the property for a foreclosure sale. At least some of these notices constituted unjustified threats to foreclose. Additionally, Wells Fargo repeatedly sent statements indicating that, notwithstanding the parties' agreements, it was assessing late fees based on the continued delinquency of the loan. Wells Fargo never consummated a foreclosure sale, and when the McCaigs had finished

[1] Because this case involves multiple members of the McCaig family, henceforth, first names will be employed. David and Marilyn will be referred to collectively as the McCaigs.

paying under the payment plan, Wells Fargo brought the loan current and waived all late fees.

During the course of this prolonged dispute, David filed a complaint with the Texas Attorney General asserting "Wells Fargo ha[d] harassed [his] family for the past few months" and that it was wrongfully demanding payment of $13,000. Wells Fargo responded with a three-page letter asserting that the McCaigs had broken the forbearance plan, providing records to support the claim, and explaining what was being done to address the issue. Because Wells Fargo's records were mistaken, the claim that the McCaigs had broken the forbearance plan was also mistaken.

For over two years, the McCaigs were subjected to intermittent and repeated threats of foreclosure. Their attempts to correct the problems were met with misinformation at times, non-responsiveness at times, and at times, apologies—followed by still more of the same "mistakes." Eventually, they sued Wells Fargo in state court. Wells Fargo removed to federal court on the basis of diversity jurisdiction, and the case went to trial on breach of contract and TDCA claims. In addition to establishing the facts set forth above, the McCaigs testified that Wells Fargo's mistakes took a toll on their mental health. David and Marilyn testified on this issue, as did their son and an expert witness.

The jury found that Wells Fargo had breached the settlement and forbearance agreements and had violated multiple provisions of the TDCA. Based on the TDCA violations, the jury awarded David and Marilyn $75,000 each for mental anguish damages and $1,900 in expenses "sustained" by them. The jury also awarded them $500 each based on a finding that Wells Fargo violated the TDCA by representing to a third party that the McCaigs were willfully refusing to pay an uncontested debt. Further, the jury awarded the McCaigs $200,000 in attorney's fees.

The district court entered judgment in accordance with the jury's verdict except that the award for attorney's fees was reduced to $156,775. Wells Fargo then moved for a new trial and for judgment as a matter of law. The motions were denied, and Wells Fargo appealed.

STANDARD OF REVIEW

A district court's denial of a motion for judgment as a matter of law is reviewed *de novo* under the same Rule 50(a) standard utilized by the district court. *Heck v. Triche*, 775 F.3d 265, 272 (5th Cir. 2014). To the extent the defendant challenges the sufficiency of the evidence after a case tried by a jury, our review is "especially deferential" to the verdict. *Id.* (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)). We will uphold the verdict "unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Id.* (quoting *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008)). "In conducting our review, we must draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that we might regard as more reasonable." *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 238 (5th Cir. 2014).

A district court's resolution of a motion for new trial is reviewed for abuse of discretion, and "[t]he district court abuses its discretion by denying a new trial only when there is an 'absolute absence of evidence to support the jury's verdict.'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013) (quoting *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991)). Accordingly, if we find the evidence is legally sufficient, we must also find that the district court did not abuse its discretion in denying a motion for new trial. *See Cobb v. Rowan Companies, Inc.*, 919 F.2d 1089, 1090 (5th Cir. 1991); *see also Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) (explaining that it is "far easier" to show a district court should have granted

a motion for judgment as a matter of law than it is to show a district court abused its discretion by not granting a new trial).

DISCUSSION

I.

Wells Fargo argues that neither Marilyn nor David had statutory standing to bring TDCA claims. "We review questions of statutory standing de novo." *Janvey v. Brown*, 767 F.3d 430, 437 (5th Cir. 2014).

Texas Financial Code section 392.403[2] creates a private right of action for TDCA violations and provides: "A person may sue for: actual damages sustained as a result of a violation of this chapter." Tex. Fin. Code § 392.403(a)(2). Because the Texas Supreme Court has not defined the scope of Section 392.403(a)(2) and statutory standing to bring TDCA claims, our job is to "predict" how the court will rule. *See, e.g.*, *Wisznia Co. v. General Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014). In making this "*Erie* guess," we first examine precedents set by intermediate state appellate courts. *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000). "[W]e defer to intermediate state appellate court decisions 'unless convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002) (quoting *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998)).

"When we interpret a Texas statute, we follow the same rules of construction that a Texas court would apply—and under Texas law the starting point of our analysis is the plain language of the statute." *Wright v. Ford Motor Co.*, 508 F.3d 263, 269 (5th Cir. 2007). Section 392.403 "itself provides the framework for the standing analysis," and "[t]he standing

[2] All further unlabeled statutory references are to the Texas Financial Code.

analysis begins and ends with the statute itself." *Marauder Corp. v. Beall*, 301 S.W.3d 817, 820 (Tex. App. 2009). "The statute is broadly written." *Id.* Texas courts have recognized that Section 392.403's grant of standing is not limited to debtors. *Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex. App. 1996) ("The Act provides for remedies for 'any person' adversely affected by prohibited conduct, not just parties to the consumer transaction."); *Campbell v. Beneficial Fin. Co. of Dallas*, 616 S.W.2d 373, 374 (Tex. App. 1981) (holding that because "any person may maintain an action for actual damages sustained as a result of the violation of the Act, . . . persons other than the debtor may maintain an action for violations of the Act"). The rule suggested by these cases and supported by a plain reading of the statutory text is that persons who have sustained actual damages from a TDCA violation have standing to sue. *See* Tex. Fin. Code §392.403(a)(2).

Under Texas law, mental anguish is a form of "actual damages." *See, e.g.*, *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002). Here, the McCaigs alleged (and proved) mental anguish caused by Wells Fargo's TDCA violations. They therefore had standing to bring their claims.

Wells Fargo argues Marilyn's "lack of standing is indisputable" because she owns no interest in the [subject property], is "not a party to or obligor on the underlying Note and Deed of Trust," and was not an addressee on any of the objectionable Wells Fargo correspondences. It asserts her TDCA claims are "wholly derivative of her husband's" and that bystander liability is not permitted. Wells Fargo argues David lacks standing under the TDCA because he was not a party to Allie's loan and had no personal liability. Wells Fargo further argues David was not the "target of prohibited conduct." Wells Fargo's briefing entirely ignores Section 392.403(a) and does not cite any of the Texas intermediate appellate court decisions referenced above.

Whether Marilyn or David own an interest in the subject property or are parties or obligors on the subject debt is irrelevant for purposes of the standing inquiry. *See, e.g.*, *Monroe*, 936 S.W.2d at 660 (holding that standing to bring TDCA claims extends beyond "parties to the consumer transaction"); *Campbell*, 616 S.W.2d at 374 ("[P]ersons other than the debtor may maintain an action for violations of the [TDCA].").

Further, Wells Fargo's invocation of "bystander standing" is a red herring, and Wells Fargo inaccurately downplays Marilyn's connection to events. Marilyn was a signatory to the forbearance and settlement agreements and therefore was obligated to "make the required payments consistent with the Forbearance Agreement and *the Loan Agreement*." (Emphasis added.) Wells Fargo had at least constructive knowledge that its various mailings would be received by Marilyn. Indeed, at least two Wells Fargo correspondences to the "Estate of Allie Vida McCaig" were sent "C/o David and Marilyn McCaig." The threats that caused her harm were threats to take away a home. The misrepresentations that caused her harm concerned a loan agreement she had agreed to make payments in accordance with. This is not bystander standing. *See Campbell*, 616 S.W.2d at 374.

This analysis applies with even greater force to David, who was the addressee of much of the offending correspondence and personally dealt with Wells Fargo over the phone and through correspondence.

Wells Fargo urges a far narrower conception of TDCA standing than that provided for by Section 392.403(a)(2). According to Wells Fargo, "a TDCA plaintiff must have been the target of unlawful debt collection activity as defined in the statute in order to have standing to sue." Several district courts

have applied such a rule.[3] In rejecting this rule, it is sufficient to observe that Section 392.403(a)(2) contains no targeting requirement and that the district courts that have adopted the rule did not base their standing analyses on the text of Section 392.403(a)(2). As a federal court sitting in diversity, our duty is to apply existing state law, not create it. *See, e.g.*, *Carnival Leisure Indus., Ltd. v. Aubin*, 53 F.3d 716, 720 (5th Cir. 1995). The McCaigs had standing to bring their TDCA claims.

II.

Wells Fargo argues the economic loss rule bars the McCaigs' TDCA claims because Texas courts have applied the economic loss rule to the similar Texas Deceptive Trade Practices Act ("DTPA") and because "mistakes in performance under a contract" should not "trigger recovery under the TDCA."[4] Whether the economic loss rule applies to the TDCA is a legal question we review *de novo*. *See SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 441 (5th Cir. 2008).

The economic loss rule "serves to provide a more definite limitation on liability than foreseeability can and reflects a preference for allocating some economic risks by contract rather than by law." *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014). "[T]he rule is not generally

---

[3] *See, e.g.*, *Brush v. Wells Fargo Bank, N.A.*, 911 F.Supp.2d 445, 472 (S.D. Tex. 2012); *Prophet v. Myers*, No. CIV.A.H-08-0492, 2009 WL 1437799, at *3 (S.D. Tex. May 21, 2009); *Lee v. Wells Fargo Bank, N.A.*, No. CIV.A. H-11-1334, 2013 WL 754053, at *8 (S.D. Tex. Feb. 27, 2013).

[4] That "mistakes" should not trigger liability under the TDCA is the dominant theme in Wells Fargo's briefing. As a general rule, there is express statutory support for that assertion. Under Section 392.401, the TDCA is not violated where "the action complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error." For whatever reason, Wells Fargo chose not to plead or prove this affirmative defense. *See Waterfield Mortg. Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 647 (Tex. App. 1996). On appeal, though arguing it made only innocent and understandable mistakes, Wells Fargo conspicuously omits any citation or reference to Section 392.401. Accordingly, we express no opinion on how Section 392.401 might apply to a case such as this.

applicable in every situation; it allows recovery of economic damages in tort, or not, according to its underlying principles." *Id.* at 235–36. Accordingly, "application of the rule depends on an analysis of its rationales in a particular situation." *Id.* at 245–46.

Breach of "an independent legal duty, separate from the existence of the contract itself," represents a particular situation where tort claims (based on that independent duty) may co-exist with contract claims (based on a breach of the contract). *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). "Thus, a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014).

If Wells Fargo violated the TDCA, it can be held liable for those violations even if there are contracts between the parties, and even if Wells Fargo's prohibited conduct also amounts to contractual breach. A statutory offender will not be shielded from liability simply by showing its violation also violated a contract.

Indeed, the TDCA contemplates that there will often be contractual duties running between a consumer and debt collector,[5] and a debt collector's otherwise wrongful conduct may be permissible if authorized by contract. *See, e.g.*, Tex. Fin. Code § 392.301(b)(3) (providing that debt collectors are not prevented from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings"); § 392.303(a)(2) (prohibiting debt collectors from collection or attempted

---

[5] As discussed above, Wells Fargo even argues a contractual relationship is *necessary* to have standing under the TDCA.

collection of certain charges "unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation"). Permitting debt collectors to cast the absence of a contractual right as a mere contractual breach triggering the economic loss rule would fundamentally disrupt the statutory scheme.

The cases Wells Fargo cites where Texas courts have applied the economic loss rule to the DTPA are inapt because, in each of them, the Texas Supreme Court concluded there was no statutory violation to begin with. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (rejecting a theory of DTPA liability that "would convert every breach of contract into a DTPA claim"); *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex. 1983) ("An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA.'"). While, under *Crawford* and *Ashford*, a breach of contract does not itself constitute a DTPA violation, the Texas Supreme Court has never held that *underlying conduct* that breaches an agreement cannot violate the DTPA merely because it also breaches an existing contractual obligation. Put differently, if a particular duty is defined both in a contract and in a statutory provision, and a party violates the duty enumerated in both sources, the economic loss rule does not apply. *See Formosa Plastics Corp. USA*, 960 S.W.2d at 47 (recognizing under certain limited circumstances that conduct can give rise to both tort and breach of contract claims).

The economic loss rule does not bar the McCaigs' TDCA claims.

## III.

The jury was asked within one question whether Wells Fargo violated TDCA sections 392.301(a)(7), 392.301(a)(8), 393.303(a)(2), 392.304(a)(8), or 392.304(a)(12). As required by the verdict form, the jury answered with a categorical "Yes."

A.

Because the verdict form leaves us in the dark as to which TDCA provision (or provisions) the jury deemed violated, Wells Fargo argues on appeal that we must remand for a new trial if any of the five theories fail.

The "general rule" is "that 'when a case is submitted to the jury on a general verdict, the failure of evidence or a legal mistake under one theory of the case generally requires reversal for a new trial because the reviewing court cannot determine whether the jury based its verdict on a sound or unsound theory.'" *Muth v. Ford Motor Co.*, 461 F.3d 557, 564 (5th Cir. 2006) (quoting *Maryland v. Baldwin*, 112 U.S. 490, 493 (1884)). A party that makes no objection "as to form or substance," however, cannot argue for the first time on appeal that a new trial is required due to inherent ambiguity in the verdict form. *See Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 878 (5th Cir. 2013).

Here, Wells Fargo objected to the substance of the question but not its form. We need not determine whether, generally, such an objection is sufficient to preserve the issue for appeal, however. Wells Fargo invited the error and cannot complain of it now.

The question at issue, "Question 4," asked whether Wells Fargo "violated the [TDCA] by committing any of the following prohibited acts" and went on to describe five possible ways the TDCA might have been violated. The trial transcript reveals how Question 4 took on its form. Initially, Wells Fargo submitted draft instructions that set forth each potential violation separately. The district court was skeptical about the necessity of such an approach and asked if it would not be better to list the potential violations within one question. After a brief colloquy, counsel for Wells Fargo stated, "I believe, your Honor, if I had to draft this over again, that's the way I'd draft it." Two days later, just prior to closing arguments, Wells Fargo's counsel objected Question 4 on the grounds that there was "insufficient evidence of each of the three

subsections submitted under Question Number 4." After the objection was overruled, the district court specifically asked if there were any further objections to Question 4, and Wells Fargo counsel answered, "No."

"A party cannot complain on appeal of errors which he himself induced the district court to commit." *United States v. Lopez-Escobar*, 920 F.2d 1241, 1246 (5th Cir. 1991). This "invited error doctrine applies to jury instructions as well as evidentiary rulings." *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 606–07 (5th Cir. 1991); *see also United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005) ("When a party responds to a court's proposed jury instructions with the words 'the instruction is acceptable to us,' such action constitutes invited error."). It "prevents a litigant from speculating on a verdict, and then, when the speculation turns out badly, escaping the consequences of having done so." *Alabama Great S. R. Co. v. Johnson*, 140 F.2d 968, 971 (5th Cir. 1944).

With the words, "If I had to draft this over again, that's the way I'd draft it," Wells Fargo expressly endorsed the jury question it now complains of. It thus introduced an error that would be harmless if the jury found in Wells Fargo's favor while likely necessitating a new trial if the jury found against Wells Fargo. This is the sort of speculation the invited error doctrine is designed to prevent, and Wells Fargo cannot now complain. *See Alabama Great S. R. Co.*, 140 F.2d at 971. We will affirm the jury's finding of a TDCA violation "if any *one* of the underlying theories is legally and factually sufficient." *Pan E. Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1124 (5th Cir. 1988).

B.

We now consider each of the TDCA provisions at issue in Question 4. We will conclude that the evidence supports a finding that Wells Fargo violated four of the provisions.

*Tex. Fin Code § 392.301(a)(7)–(8)*

(a) In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices:

(7) threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings; or

(8) threatening to take an action prohibited by law.

Tex. Fin. Code § 392.301(a)(7)–(8).

However a debt collector may "exercise[e] or threaten[ ] to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code § 392.301(b)(3). Wells Fargo argues that its mistaken threats to foreclose are permissible under this exception. According to Wells Fargo, the "plain language" of Section 392.301(b)(3) means it is not liable for "threatening to exercise its contractual and statutory rights, even if Wells Fargo changed course after learning its analysis of the situation was mistaken." The McCaigs argue that "Wells Fargo gave up any right it may have had to foreclose under the Note due to late payments," meaning it had no "right" upon which to base a Section 392.301(b)(3) defense.

We agree with the McCaigs. As indicated by the statutory text, without an actual predicate "contractual right," there is no Section 392.301(b)(3) defense. Wells Fargo may be right that "[t]he TDCA does not punish a mere breach of contract," but a debt collector seeking the affirmative protections of Section 392.301(b)(3) must be within its *contractual* rights. Wells Fargo was not.

Wells Fargo relies on our unpublished case, *Singha v. BAC Home Loans Servicing, L.P.*, 564 F.App'x 65 (5th Cir. 2014), in which we reasoned that "[s]ince BAC is a proper mortgagee, threatening foreclosure is expressly permitted by the TDCA." *Id.* at 70. In *Singha*, however, we specifically found that the mortgagee-defendant had a right to foreclose—the lender was a

"proper mortgagee" and it had not "waive[d] its right of foreclosure." *Id.* at *5. Here, Wells Fargo had no right to foreclose. The case is distinguishable.

Subsections (a)(7) and (a)(8) provide two different ways of proving a TDCA violation. There is no evidence to support a finding that Wells Fargo violated section 392.301(a)(7), which prohibits specific threats to seize or dispose of "property without proper court proceedings." Section 392.301(a)(7) simply does not apply to non-judicial foreclosure.

The McCaigs argue that Wells Fargo violated Section 392.301(a)(8) by threatening to take an action prohibited by law—specifically, by threatening to foreclose absent any right to do so. Wells Fargo's defense primarily relies on Section 392.301(b)(3), which we have already held inapplicable under these factual circumstances. Wells Fargo also argues that we must read Section 392.301(a)(8) "in context and in harmony with the surrounding provisions" and that a "breach (or threatened breach) of a consumer contract" is not "egregious conduct" like that expressly forbidden. This secondary argument has no substance. Section 392.301(a)(8) prohibits threats "to take an action prohibited by law;" whether the threat is "egregious" is immaterial. *See Dixon v. Brooks*, 604 S.W.2d 330, 334 (Tex. App. 1980) (holding threats to terminate a contract without statutorily required notice were "prohibited by law" under the TDCA). In any event, the McCaigs did not sue Wells Fargo simply for threatening to breach a contract; they sued because Wells Fargo threatened to unjustifiably take a home from them and sell it at a foreclosure sale. That threat is every bit as egregious as various other threats specifically prohibited by Section 392.301.

Wells Fargo clearly threatened to foreclose, and thus to "take an action." *See* Section 392.301(a)(8). The question is whether that threatened action was prohibited by law. The right to a nonjudicial foreclosure, where it exists, is a contractual right memorialized within "a deed of trust or other contract lien."

*See* Tex. Prop. Code § 51.002(a). Because a default generally triggers a mortgagor's right to foreclose under a deed of trust, district courts have recognized that Section 392.301(a)(8) claims premised on a threat of foreclosure generally turn on whether the mortgage is in default. *Wildy v. Wells Fargo Bank, NA*, No. 3:12–CV–01831–BF, 2012 WL 5987590, at *3 (N.D.Tex. Nov. 30, 2012) ("[F]oreclosure, or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on their mortgage."). This is so because a mortgagor will be able to have the sale set aside if a property is foreclosed upon absent default. *See Phillips v. Latham*, 523 S.W.2d 19, 21–22 (Tex. App. 1975).

Here, Wells Fargo contracted away its right to foreclose while expressly maintaining the loan's status as in default. In determining whether foreclosure would be prohibited by law, however, what matters is whether the mortgagor has a right to foreclose, not whether the debt is considered in default. *Cf. Matter of Marriage of Rutherford*, 573 S.W.2d 299, 301 (Tex. App. 1978) ("The holder of a note may waive the right to foreclose as to past defaults where late payments have been regularly accepted and notice has not been given that future defaults will provide the basis for foreclosure proceedings."). Had Wells Fargo foreclosed absent a right to do so, the McCaigs would have been entitled to a judgment setting aside the sale.[6] Accordingly, the threat to foreclose was a threat to take an action prohibited by law. That threat is actionable under Section 392.301(a)(8).

*Tex. Fin. Code § 392.303(a)(2)*

> (a) In debt collection, a debt collector may not use unfair or unconscionable means that employ the following practices: (2) collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or

[6] In arguing that an award of damages for mental anguish is not proper, Wells Fargo even labels its own conduct "attempted wrongful foreclosure."

> incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.

Tex. Fin. Code § 392.303(a)(2).

The settlement agreement included a provision that Wells Fargo would "waive and forebear" the collection of certain fees and costs "conditioned upon the McCaigs [*sic*] successful completion of, and performance under, this Agreement and the Forbearance Agreement." It is undisputed that Wells Fargo "assessed" certain fees and late charges that it later waived. The McCaigs argue that these charges were not authorized and therefore represent a Section 392.303(a)(2) violation. Wells Fargo raises three arguments that the McCaigs' Section 392.303(a)(2) claim failed as a matter of law.[7]

Because the challenged fees in this case were made in connection with Allie's home loan, Wells Fargo argues that the McCaigs lack "standing" to assert Section 392.303(a)(2) claims. Wells Fargo asserts the McCaigs were not "liable for paying" Allie's loan. The evidence is to the contrary. The settlement agreement requires Marilyn and David "make the required payments consistent with the Forbearance Agreement *and the Loan Agreement*." (Emphasis added). Thus, once the parties entered the settlement and forbearance agreements, the McCaigs became obligated to pay any charges assessed on the loan by Wells Fargo. Any attempt to collect from Allie, who Wells Fargo knew was deceased, was necessarily an attempt to collect from the McCaigs, who had agreed to make payments required under Allie's "Loan Agreement."

[7] In its reply brief, Wells Fargo also argues that its actions were not "unfair or unconscionable" as required by Section 392.303(a)(2). Arguments first raised in a reply brief are waived. *E.g.*, *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 459 n.3 (5th Cir. 2010). In any event, the statute is best read to define "unfair and unconscionable" practices as those listed in its various subsections, including (a)(2).

Wells Fargo also argues that the fees were authorized because, under the settlement agreement, they were not waived until the payment plan established by the forbearance agreement had been completed. The text of the settlement agreement does not support such a reading. Wells Fargo "agreed to waive and forebear" the collection of the fees and costs "conditioned upon the McCaigs [*sic*] successful completion of, *and performance under*," the settlement and forbearance agreements. (Emphasis added.) Wells Fargo's argument that the fees were waived upon completion of the payment plan would be obviously correct if the settlement agreement did not include the phrase "and performance under." We must, however, give that phrase meaning. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) ("Courts must favor an interpretation that affords some consequence to each part of the instrument so that none of the provisions will be rendered meaningless."). The fees were "conditionally" waived the moment the parties entered the settlement agreement, and that waiver remained in effect so long as the McCaigs performed under the forbearance agreement. The McCaigs faithfully performed, and the undisputedly "assessed" fees and costs were unauthorized. *See* Tex. Fin. Code § 392.303(a)(2).

Wells Fargo's final argument, that "there were no unauthorized charges" because the fees were not "ultimately" collected, is meritless. *See Eads v. Wolpoff & Abramson, LLP*, 538 F.Supp.2d 981, 986 & n.5 (W.D. Tex. 2008). Section 392.303(a)(2) makes "attempt[s] to collect" actionable. That the charge was later "removed" merely suggests it was unauthorized to begin with.

While Wells Fargo argues it never attempted to collect these fees "from the McCaigs" and "from them personally," but does not argue it never attempted to collect the fees—full stop. That argument is therefore waived. We have already explained why an attempt to collect the fees from Allie—who was deceased and whose obligation David and Marilyn had agreed to

undertake—necessarily amounted to an attempt to collect from the McCaigs. We assume without holding that Wells Fargo attempted to collect the fees from Allie, and thus the McCaigs. Collection of such fees was not authorized under the parties' agreements, and the evidence was sufficient to support a finding that Wells Fargo violated Section 392.303(a)(2).

*Tex. Fin. Code § 392.304(a)(8)*

> Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding.

Tex. Fin. Code. § 392.304(a)(8).

Wells Fargo argues the McCaigs presented "no evidence that Wells Fargo misrepresented the character, extent, or amount of Allie's debt." Additionally, within its standing argument, Wells Fargo also argues David McCaig is not a "consumer" and that the obligation to pay Wells Fargo is not a "consumer debt" for purposes of the TDCA.

Because the amount ultimately owed on the loan depended on whether the McCaigs adhered to the forbearance plan, Wells Fargo kept two sets of records. Wells Fargo explains its "computer software was not equipped to handle" the settlement and forbearance agreements meaning "manual tracking" was required. This led to mistakes. For example, on April 6, 2010, Wells Fargo sent a notice asserting the forbearance plan had been broken when it had not been. Additionally, a customer representative with no access to records pertinent to the forbearance agreement told David his repayment plan had been cancelled and that he needed to pay $11,900 to avoid foreclosure. Finally, as discussed above, Wells Fargo's representations with respect to the amount owed on Allie's loan included unauthorized late charges that Wells Fargo now asserts were never owed at all. The evidence supports a finding

that Wells Fargo misrepresented the amount, extent, and character of the McCaigs' obligation. *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013).

Wells Fargo's argument that David is not a consumer because he was not "a party to Allie's loan" and not liable for her consumer debt overlooks the statutory definitions. A consumer is an individual with a "consumer debt." Tex. Fin. Code § 392.001(1). "'Consumer debt' means an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code § 392.001(2). When the McCaigs entered the settlement and forbearance agreements, they entered a transaction with Wells Fargo that obliged them to make "payments consistent with the Forbearance Agreement and the Loan Agreement." The McCaigs put on evidence to show they undertook that obligation entirely for personal, family and household purposes. The jury's specific conclusion that the McCaigs were consumers for purposes of the TDCA is supported by the evidence.

The evidence that Wells Fargo, acting as a debt collector, misrepresented the amount, extent, and character of an obligation the McCaigs undertook for personal, family, and household purposes is sufficient to sustain a jury finding that Wells Fargo violated Section 392.304(a)(8).

Nonetheless, Wells Fargo further argues Section 392.304(a)(8) misleading misrepresentations must be made with an "intent" to "defraud deceive or mislead" to be actionable. The statutory text contains no intent requirement, and Wells Fargo has directed us to no decisions where a court applying the TDCA has inferred an intent requirement. Rather, as suggested by the statute's plain text, district courts have recognized that facially innocuous misrepresentations made in the course of an attempt to collect a debt constitute a violation of Section 392.304(8). *See, e.g.*, *Johnson v. Wells*

*Fargo Bank, NA*, 999 F.Supp.2d 919, 933 (N.D. Tex. 2014); *Cole v. U.S. Bank Nat. Ass'n ND*, No. CIV.A. H-11-2325, 2011 WL 3651029, at *2 (S.D. Tex. Aug. 17, 2011); *Steele v. Green Tree Servicing, LLC*, No. 3:09–cv–603–D, 2010 WL 3565415, at *5 n. 6 (N.D. Tex. Sept. 7, 2010); *Baker v. Countrywide Home Loans, Inc.*, No. CIV A 308-CV-0916-B, 2009 WL 1810336, at *7 (N.D. Tex. June 24, 2009). The Texas Court of Appeals has observed numerous times that a bank's "failure to keep accurate records" may lead to liability under Section 392.304(a)(8). *See Dodeka, L.L.C. v. Campos*, 377 S.W.3d 726, 733 (Tex. App. 2012); *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 244 (Tex. App. 2010); *accord Levy v. Cach, L.L.C.*, No. 14-12-00905-CV, 2013 WL 6237273, at *3 (Tex. App. Dec. 3, 2013) (unpublished) ("[A] failure by the Bank to keep accurate records of its customers' credit-card debt could result in . . . civil penalties." (citing Tex. Fin. Cod. § 392.304(a)(8)); *Ainsworth v. CACH, LLC*, No. 14-11-00502-CV, 2012 WL 1205525, at *5 (Tex. App. Apr. 10, 2012) (unpublished) (same).

Additionally, imposition of an intent requirement is inconsistent with Section 392.401, which provides *as an affirmative defense* that the TDCA is not violated "if the action complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error." Lack of intent is thus an aspect of an affirmative defense Wells Fargo chose not to plead or prove. *See Torres v. Mid-State Trust II*, 895 S.W.2d 828, 831 (Tex. App. 1995) (holding "the *bona fide* error defense requires a creditor to prove," *inter alia* "that the violation was not intentional"). As discussed previously, Wells Fargo has not asserted this defense at any stage of the proceedings.

*<u>Tex. Fin. Code § 392.304(a)(8)</u>*

> Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may

> not use a fraudulent, deceptive, or misleading representation that employs the following practices: representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges

Tex. Fin. Code § 392.304(a)(8).

We have already held that, under the settlement and forbearance agreements, late fees were not authorized so long as the McCaigs made payments under the forbearance plan. Under these circumstances, the same evidence that supports a finding that Wells Fargo violated Section 392.303(a)(2) is sufficient to sustain a finding that Wells Fargo violated Section 392.304(a)(12) as well.

Testifying, Wells Fargo's corporate representative Michael Dolan tried to distinguish between late fees that were "assessed" and late fees that were "charged," suggesting that late fees were not actually "charged" if the McCaigs did not ultimately pay them. But Section 392.304(a)(12) prohibits representations that an unauthorized fee "*may*" be levied, making this already dubious distinction immaterial. The assessed late fees appeared on correspondences sent to the McCaigs as Wells Fargo sought to collect a debt. This evidence supports a finding that Wells Fargo violated Section 392.304(a)(12).

## IV.

Based on the TDCA violations discussed above, the jury awarded the McCaigs actual damages for "expenses" and for mental anguish. Wells Fargo challenges the McCaigs' entitlement to the damages and challenges the measure of the mental anguish award. There is no evidence to support the jury's $1,900 award for expenses. Otherwise, we affirm.

A.

The jury awarded the McCaigs $1,900 in damages for expenses supposedly caused by Wells Fargo's TDCA violations. The McCaigs incurred the expenses by voluntarily making payments under the forbearance plan via certified checks and through overnight mail. Wells Fargo's TDCA violations did not cause these expenses, and they are not recoverable as damages.[8] *See Ledisco Fin. Servs., Inc. v. Viracola*, 533 S.W.2d 951, 957 (Tex. App. 1976).

B.

We are "very deferential" to the jury finding that the McCaigs were entitled to damages. *See Vogler v. Blackmore*, 352 F.3d 150, 154 (5th Cir. 2003). "We apply federal standards of review to assess the *sufficiency or insufficiency* of the evidence in relation to the verdict, but in doing so we refer to state law for the *kind of evidence* that must be produced to support a verdict." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) (emphasis added; alterations, internal quotations, and citations omitted); *see also Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 398 (5th Cir. 2013) ("The law governing what damages are recoverable is substantive, and therefore in a diversity case state law governs what damages are available for a given claim and the manner in which those damages must be proved."). In short, state law governs what the plaintiff must prove and how it may be proved; federal law governs whether the evidence is sufficient to prove it.

---

[8] The damages were also not caused by Wells Fargo's alleged breach of the forbearance and settlement agreements. They were incurred as part of the McCaigs' performance. Accordingly, there can be no alternative recovery for breach of contract. *See Snyder v. Eanes Indep. Sch. Dist.*, 860 S.W.2d 692, 695 (Tex. App. 1993); *see also Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 72 (Tex. 1997) ("[A] breach of contract action will not support mental anguish damages.").

Under Texas law, to show an entitlement to mental anguish damages, the plaintiff must put on evidence showing "the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine," or showing "'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.'" *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (quoting *J.B. Custom Design & Bldg. v. Clawson*, 794 S.W.2d 38, 43 (Tex. App. 1990)). Plaintiffs are not required to show the mental anguish resulted in physical symptoms. *Id.* at 443.

"[D]amages for mental anguish are recoverable under the [TDCA]." *Monroe*, 936 S.W.2d at 661. Expert testimony is not required to show compensable mental anguish, which may be proven by the "claimants' own testimony, that of third parties, *or* that of experts." *Parkway Co.*, 901 S.W.2d at 444 (emphasis added); *see also Gilmore v. SCI Texas Funeral Servs., Inc.*, 234 S.W.3d 251, 258 n.4 (Tex. App. 2007) ("Expert testimony is not required to recover mental anguish damages."). Similarly, expert testimony is not required to establish that mental anguish led to physical symptoms. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 233 (Tex. 2011) (affirming a finding of mental anguish where the claimant "testified that she suffered burning in her stomach due to the stress and sought medical treatment for the symptoms" and further testified "[s]he continued to have headaches and take medication for anxiety and depression"). The suffering of family members may evidence mental anguish. *See Bentley*, 94 S.W.3d at 606–07 (reciting evidence adequately supporting a finding of mental anguish, including evidence that "the ordeal . . . disrupted [the plaintiff's] family, and distressed his children at school" and "that his family had suffered, too, adding to his own distress").

Marilyn testified that dealing with Wells Fargo was "outrageous and angering," that "[i]t's like this ominous cloud over you all the time, and

everything is related to this," and that she was "very upset and angry." She also testified she obsessed over the matter and experienced an "ongoing fear" that Wells Fargo would take the house away. Additionally, she testified she had to "try to keep [herself] calm," when observing her husband's related stress—stress she feared might cause him a heart attack. In her own words:

> It's just heart stopping; it's panic; it's fear. It's what—what can you do? I mean, it's like just—and hopelessness is mixed in there, as well, and then also just plain anger that—just out—that's just outrageous. It's just unbelievable that this could continue this way, on an on, and be ignored and be—just not—just not respected.

There is evidence David experienced anxiety and chest pain based on stress related to Wells Fargo's misconduct. According to the testimony, he had to visit the emergency room twice as a result of this pain. David testified that the events were "extremely upsetting" and affecting his family, and also that the experience left him "very anxious" and "very fearful." David testified that Wells Fargo's misconduct affected him every day over a two-and-a-half-year span. Marilyn testified that David "was becoming more anxious; he was becoming more withdrawn . . . it just wasn't his usual self. He would wake up and be thinking about this." The McCaigs' son also testified to a change in David—that he was "tense, stressed, frustrated, worried."

Based on the evidence, we cannot upset the jury's finding that Marilyn and David suffered a sufficiently "high degree of mental pain and distress." *See Parkway Co.*, 901 S.W.2d at 444. *Cf. Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 304–05 (5th Cir. 2009) (affirming mental anguish award under Louisiana law). The evidence is that Wells Fargo's repeated mistakes and institutional inability to identify and remedy its mistakes cast a deep pall of extended duration over the McCaig household. The evidence was provided by the claimants themselves and corroborated. Based on the evidence, a reasonable

jury could find Wells Fargo's TDCA violations caused the McCaigs compensable mental anguish.

The McCaigs also offered expert testimony linking David's chest pain to the situation with Wells Fargo. We have already held that expert testimony was not required. On appeal, Wells Fargo argues the district court abused its discretion by permitting the expert to testify. "Even assuming an abuse of discretion occurred, the erroneous admission is subject to a harmless error analysis." *St. Martin v. Mobil Exploration & Producing U.S. Inc.*, 224 F.3d 402, 405 (5th Cir. 2000). The appellant bears the burden of proving the error was not harmless. *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 842 (5th Cir. 2004). Wells Fargo has not discussed the harmless error standard or argued that admitting the expert testimony affected its substantial rights. Wells Fargo's argument is simply that "[w]ithout expert testimony to support their mental anguish claims, the McCaigs' lay testimony . . . was insufficient as a matter of law to support their damages recovery." Wells Fargo is wrong on the law and has not shown that any error in admitting the expert testimony was harmful.

C.

Wells Fargo argues we should "at least" grant a new trial to determine whether the McCaigs are entitled to mental anguish damages because the jury's mental anguish finding is against the great weight of the evidence. The argument overlooks the standard of review. We are not deciding Wells Fargo's request for a new trial in the first instance and instead consider whether there is "an absolute absence of evidence to support the jury's verdict." *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1046 (5th Cir. 1998). We have already determined the evidence supports the verdict, and we cannot say the district court abused its discretion in denying Wells Fargo's motion for new trial.

D.

Wells Fargo also seeks a new trial based on the jury instruction given regarding mental anguish. "We review jury instructions for abuse of discretion." *Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 206 (5th Cir. 2011) (per curiam). "Because of the broad discretion afforded district courts in framing the instructions to the jury, we will find such an abuse of discretion only if the charge as a whole is not a correct statement of the law and does not clearly instruct the jurors regarding the legal principles applicable to the factual issues before them." *Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d 273, 293 (5th Cir. 2002).

The challenged jury instruction accurately sets forth the law, and we cannot say the district court abused its discretion by rejecting Wells Fargo's requested instruction.

E.

Wells Fargo also argues the "excessive" $75,000 award to each David and Marilyn necessitates a new trial.

"The size of the award to which a plaintiff is entitled is generally a fact question, and the reviewing court should be 'exceedingly hesitant' to overturn the decision of the jury—the primary fact finder—and the trial judge' who entered judgment on the verdict." *Wackman v. Rubsamen*, 602 F.3d 391, 404 (5th Cir. 2010) (quoting *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 934 (5th Cir. 1982)). Accordingly, only the "*strongest* of showings" warrants reversal. *Id.* (quoting *Foradori*, 523 F.3d at 504). "Our review of a damage award for emotional distress and mental anguish is conducted with deference to the fact-finder because of the intangibility of the harms suffered." *Tompkins v. Cyr*, 202 F.3d 770, 783 (5th Cir. 2000). "Absent gross excessiveness," we accept as proper the measure of damages a jury awards for mental anguish. *Pope v. Rollins Protective Servs. Co.*, 703 F.2d 197, 207 (5th Cir. 1983). We

cannot say the district court abused its discretion in denying the motion for a new trial on damages.

V.

Wells Fargo also argues that insufficient evidence supports the jury's finding that it violated Section 392.301(a)(3), which prohibits debt collectors from making representations "to any person other than the consumer that a consumer is wilfully refusing to pay a nondisputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute." We agree with Wells Fargo.

According to the McCaigs, Wells Fargo's correspondence with the Texas Attorney General violated Section 392.301(a)(3). However, Section 392.301(a)(3) requires representations that the subject debt is *nondisputed* and that the consumer's refusal to pay is *willful*. *See* Tex. Fin. Code § 392.301(a)(3). Neither requirement is satisfied here. As evidenced by David's initiating complaint to the Texas Attorney General, there was a dispute regarding the debt. Wells Fargo's letter responding to the complaint did not deny the existence of a dispute. Rather, within the context of a dispute, Wells Fargo told its (mistaken) side of the story. Moreover, Wells Fargo did not accuse the McCaigs of willful refusal to pay; it merely provided (erroneous) payment records and insisted the McCaigs broke their forbearance plan. Wells Fargo's letter to the AG's office did not trigger liability under Section 392.301(a)(3).

The McCaigs argue that the TDCA "imposes a standard of behavior that requires truthfulness and accuracy," meaning any mistaken communication about "the status of the loan and dispute" amounts to an actionable violation of Section 392.301(a)(3). The McCaigs completely ignore the text of Section 392.301(a)(3) and fail to cite any case law whatsoever. Their argument is

meritless. The $1,000 in statutory damages awarded for Wells Fargo's supposed violation of Section 392.301(a)(3) must be vacated.

VI.

Because the McCaigs prevailed in their TDCA claims against Wells Fargo, they were "entitled to attorney's fees reasonably related to the amount of work performed and costs." Tex. Fin Code § 392.403(b). The jury heard evidence on this issue and found the McCaigs to be entitled to $200,000 in attorney's fees. The judge reduced that award to $156,775 and entered judgment accordingly.

Wells Fargo's final argument is that the award of $156,775 in attorney's fees cannot be sustained because the evidence included "no contemporaneous billing records or other documentation recorded reasonably close to the time where the work was performed." Thus, rather than arguing the fees award is excessive, Wells Fargo argues that "no competent evidence support[s] the award." Accordingly, the specific question here—whether the type of evidence submitted can sustain a jury's finding—is a legal question we review *de novo*.

According to Wells Fargo, under *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012), plaintiffs seeking an award of attorney's fees must provide "documentary evidence of the work performed." The Texas Supreme Court has recently clarified *El Apple I*:

> *El Apple* does not hold that a lodestar fee can only be established through time records or billing statements. We said instead that an attorney could testify to the details of his work, but that "in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide this information." *Id.* at 763. For this reason, we encouraged attorneys using the lodestar method to shift their fee to their opponent to keep contemporaneous records of their time as they would for their own client. *Id.*

*City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013).

Wells Fargo's claim that the McCaigs' attorney testified without any records and based on "estimates she wrote down on [*sic*] piece of paper in her hotel on the first day of trial" is not supported by the record. Contrary to Wells Fargo's assertions, and unlike in *El Apple I* and *City of Laredo*, the McCaigs counsel did not simply estimate time spent on the case. Rather, the McCaigs provided "*other documentation* recorded reasonably close to the time when the work is performed." *El Apple I*, 370 S.W.3d at 763 (emphasis added). Specifically, the McCaigs introduced a print-out from their attorney's case management system showing individual tasks performed by the attorney and the date on which those tasks were performed. The document was not merely relied upon during testimony, it was admitted into evidence. The McCaigs' manner of proving attorney's fees was legally adequate.

Because Wells Fargo's legal challenge to the evidence fails and Wells Fargo raises no other challenges, the reduced award of $156,775 in attorney's fees is affirmed.

## CONCLUSION

The McCaigs prevailed after a jury trial and secured a verdict to which we must largely defer. Having considered Wells Fargo's numerous points of error, we find only two that have merit. The evidence does not support the jury's $1,900 award to the McCaigs for expenses. Likewise, the evidence does not support a finding that Wells Fargo violated Section 392.301(a)(3) of the Texas Financial Code, meaning there is no basis upon which to award the McCaigs $500 each in statutory damages. In all other respects, the verdict is supported by the evidence. Accordingly, we VACATE the judgment and REMAND the case for entry of judgment consistent with this opinion.

JONES, Circuit Judge, dissenting.

With due respect to my colleagues, I dissent from the affirmance of this $300,000 judgment for a house worth less $100,000 that the McCaigs never lived in, and for a debt on which they never had personal liability. Given the majority's errors in interpreting the Texas Debt Collection Act ("TDCA")[1], this kind of liability may become plausible nearly every time a lender makes a mistake concerning a consumer debt.[2] Another way to look at this result is that in Texas, there has been no cause of action for "attempted wrongful foreclosure." *Port City State Bank v. Leyco Constr.*, 561 S.W.2d 546, 547 (Tex. Civ. App. 1977); *Peterson v. Black*, 980 S.W.2d 818, 823 (Tex. App. 1998); *Anderson v. Baxter, Schwartz & Shapiro LLP*, 2012 WL 50622, at *4 (Tex. App. 2012). Until today. I would reverse the judgment.

There is no doubt that "Wells Fargo's repeated mistakes and institutional inability to identify and remedy its mistakes cast a deep pall of extended duration over the McCaig household." On the other hand, these individuals were well educated, knew their rights, and ultimately received full contractual satisfaction. Wells Fargo wrote letters and threatened foreclosure, but it never foreclosed on the house. Significantly, contrary to the majority's repeated assertions, Wells Fargo never "waived" its right to foreclose. The original loan remained in default, but Wells Fargo agreed to forbear from exercising its remedies, including foreclosure, only so long as the McCaigs made payments consistent with the Forbearance Agreement. The majority's

[1] Tex. Fin. Code §§ 392.001-392.404. All statutory citations are to the Texas Financial Code unless specified otherwise.

[2] The majority cite a TDCA provision that offers a defense for bona fide errors under certain circumstances. § 392.401. Neither party noted this defense, and research has not uncovered relevant cases. Unlike the majority, I will not speculate about the parameters of this provision.

apparent confusion between the lender's contractual rights and its mismanagement of the loan has serious legal consequences.

To be clear, I dissent from Parts II, III.B, IV.B and IV.C-E of the majority opinion.[3] My disagreement centers on the applicability of the economic loss rule.

The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007).[4] Texas cases support applying that rule here, and our own district courts have extended this reasoning to the TDCA. There is no need for the majority's sweeping, straw-man conclusions about how the TDCA coexists, or does not, with a party's contract rights. Had the McCaigs failed to make their payments, nothing Wells Fargo did was inconsistent with the Forbearance Agreement. Wells Fargo, however, repeatedly mis-accounted for the McCaigs' monthly payments and erroneously believed they were in default. Wells Fargo sent notices of breach and intent to foreclose, and then instigated, but fortunately did not consummate, formal foreclosure proceedings. That the McCaigs did not default means that Wells Fargo did not perform as it was supposed to *under the contract*. This is breach, no more.

Like the TDCA, the Texas Deceptive Trade Practices Act ("DTPA") proscribes certain unconscionable or deceptive practices that create

[3] I concur in Parts I, III.A, IV.A and V of the majority opinion.

[4] The Texas Supreme Court has carefully explained the reach and ambiguities inherent in the economic loss rule. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418-19 (Tex. 2011). The ambiguities are of little moment here, however, because Wells Fargo's bad acts occurred in its erroneous attempt to exercise its remedies under the Forbearance Agreement. The McCaigs assert no recovery for economic loss pertaining to the breach of contract, which Wells Fargo fully cured, and their only sustainable claims were for mental anguish caused by the breach.

"independent legal duties," yet the Texas Supreme Court has held, and this and lower courts have repeatedly affirmed, that mere breaches of contract cannot create DTPA liability. In *Ashford*, the Court explained that a mere breach of contract is not a "false, misleading or deceptive act" pursuant to the DTPA. *Ashford Dev., Inc. v. U.S. Life Real Estate Servs.*, 661 S.W.2d 933, 935 (citing *Dura-Wood Treating Co. v. Century Forest Indus., Inc.*, 675 F.2d 745 (5th Cir. 1982); *Coleman v. Hughes Blanton, Inc.*, 599 S.W.2d 643 (Tex. Civ. App. 1980)). In *Crawford*, contrary to the majority's interpretation, the Court did not "conclude[] there was no statutory violation to begin with." Rather, the Court concluded that contractual violations are not statutory violations. That is, the Court interpreted the statute to *exclude* breach of contract claims. The alleged misrepresentation in *Crawford* was a promise to perform that was never fulfilled. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996). The Texas Supreme Court rejected this as a candidate for DTPA liability, since the opposite conclusion "would convert every breach of contract into a DTPA claim." *Id.*[5]

This court and a legion of Texas courts have correctly construed *Crawford* and *Ashford* to exclude mere breach of contract cases from DTPA liability. *See, e.g.*, *Dura-Wood*, 675 F.2d at 756 (5th Cir. 1982) ("an allegation of breach of contract—without more—does not constitute a false, misleading, or deceptive action such as would violate . . . the DTPA"). *See also, e.g.*, *Greco v. Jones*, 38 F. Supp. 3d 790, 799 (N.D. Tex. 2014); *Allstar Nat'l Ins. Agency v. Johnson*, No. 01-09-00322-CV, 2010 WL 2991058, at *6 (Tex. App. July 29,

---

[5] The majority opinion relies on the "independent source" doctrine, which holds that an act can give rise to both tort and contract liability when it violates duties independently arising under each body of law. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). This is true, but it ignores the fact that Wells Fargo's alleged wrongdoing here was only wrong because it violated the agreement.

2010); *Bank One, Texas, N.A. v. Little*, 978 S.W.2d 272, 281 (Tex. App. 1998); *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 890 (Tex. App. 1996); *Kuehnhoefer v. Welch*, 893 S.W.2d 689, 693 (Tex. App. 1995).

Further, district courts in this circuit have applied this rule to TDCA claims. In *Johnson*, the plaintiff "assert[ed] that, by seeking payments and charges or made [*sic*] payments out of escrow in amounts not authorized by the loan documents, Defendants misrepresented what Plaintiff owed under her loan documents—that is, her contract." *Johnson v. Wells Fargo Bank, N.A.*, No. 3:13-CV-1793-M-BN, 2014 WL 2593616, at *4 (N.D. Tex. June 9, 2014). The court in that case joined other district courts that had "applied the economic loss doctrine to TDCA claims premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender." *Id. See also McCartney v. CitiFinancial Auto Credit, Inc.*, No. 4:10-CV-424, 2010 WL 5834802, at *5 (E.D. Tex. Dec. 14, 2010) ("To the extent that Plaintiff may claim that Citi made a misrepresentation or false statement by attempting to collect the debt in violation of the agreement. . ., the Court finds such an argument not to be actionable under the TDCA."); *Caldwell v. Flagstar Bank, FSB*, No. 3:12-CV-1855-K-BD, 2013 WL 705110, at *12 (N.D. Tex. Feb. 4, 2013) (applying "the economic loss rule to TDCA claims premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender"). *Cf. Singh v. JP Morgan Chase Bank, NA*, No. 4:11-CV-607, 2012 WL 3904827, at *7 (E.D. Tex. July 31, 2012) ("if the defendant's conduct would give rise to liability only because it

breaches the parties' agreement, the plaintiff's cause of action sounds only in contract"). The majority took no note of these cases duly cited by Wells Fargo.[6]

Applying the economic loss rule here, Wells Fargo should have been granted judgment as a matter of law on all four of the TDCA claims that the majority discuss. One of these is a claim for "misrepresenting the character, extent, or amount of a consumer debt[.]" § 392.304(a)(8). Consistent with *Crawford* and *Ashford*, the "misrepresentation" occasioned solely as a result of Wells Fargo's breach of its contract with the McCaigs should not have been transformed into a statutory claim for mental anguish damages. Two other claims are for the "unfair or unconscionable" practices of "attempting to collect . . . a charge, fee, or expense incidental to the obligation unless . . . expressly authorized by the agreement creating the obligation," § 392.303(a)(2), and for the "fraudulent, deceptive or misleading" practice of "representing that a consumer debt may be increased by the addition of attorney's fees, service fees, or other charges if a written contract or statute does not authorize" them. § 392.304(a)(12). These claims relate to the accruals of interest, penalties, and fees (erroneously) premised on the McCaigs' default. But the parties' agreement expressly authorized, in writing, the accrual of certain fees and charges during the pendency of the Forbearance Agreement, and these charges were all removed once the McCaigs had completed the makeup payments. Because the contracts, whether complied with or not, provided for these charges, no non-contractual statutory violation should be recognized.

Finally, for violating its contract, Wells Fargo was found guilty of "threats or coercion" consisting of threats to foreclose "without proper court

[6] *But see Baker v. Countrywide Home Loans, Inc.*, 2009 WL 1810336, at *7 (N.D. Tex. 2009); *Steele v. Green Tree Servicing, LLC*, 2010 WL 3565415 (N.D. Tex. 2010), at *6; *Brush v. Wells Fargo Bank, N.A.*, 911 F.Supp.2d 445, 474 (S.D. Tex. 2012). These cases hold that lenders' errors in loan balance statements may give rise to TDCA violations, but none of them discusses nor squarely rejects the economic loss rule.

proceedings," § 392.301(a)(7), and "threatening to take an action prohibited by law." § 392.301(a)(8). The majority's reading of these provisions specifically equates mere contract breach with statutory violations, contrary to *Crawford* and *Ashford*.

Equally unjustifiable, the majority's interpretation of these two provisions eviscerates the very next statutory provision, which was clearly intended to preserve a lender's legal rights. § 392.301(b) states that "Subsection (a) does not prevent a debt collector from: . . . (2) threatening to institute civil lawsuits or other judicial proceedings to collect a consumer debt; or (3) exercising or threatening to exercise a statutory or contractual right of [nonjudicial foreclosure]." That language is clear, and it is simply not contingent on whether the lender is in breach of the basic contract. This language is not contingent on whether a lender is in breach because otherwise, whenever the parties' dispute about a debt evolves into a lawsuit, other judicial proceedings, or foreclosure, and the lender loses, it would automatically be liable for violating the TDCA by an action "without proper court proceedings" or "prohibited by law." The majority, in essence, penalizes the lender's access to the courts unless it wins the suit. This is a high price to pay for accessing the justice system, and it is a price at odds with the statute.

Perhaps the simplest explanation of the overall inconsistency between the majority's holding and the economic loss rule was articulated in a Texas appellate court's reasoning why a tenant's claim for return of a $175 deposit withheld by a landlord could not be transformed into a DTPA action. *See Holloway v. Dannenmaier*, 581 S.W.2d 765, 767 (Tex. Civ. App. 1979) (cited in *Crawford,* 917 S.W.2d at 14). The court posited that the landlord ignored the lease agreement, refused to return the deposit and, compounding the tenant's difficulty, shielded itself with a plea of privilege to be sued two hundred miles away. The court asked:

> Would this be a misrepresentation of the rights, remedies or obligations stated in the contract? No. Although tenant might believe that he could get a refund or a written explanation without going to court for same, he had no more guaranty than any other party to any contract that the same would not be breached. He still has the same rights spelled out in the contract. As in any breach of contract, he has the right to bring an action to enforce them.[7]

*Id.* So it was here, only the McCaigs never had to file suit to enforce their rights against Wells Fargo under the Forbearance Agreement.

The TDCA should be interpreted consistently with Texas law that, in the closely related area of deceptive trade practices, has diligently discriminated between violations of the statute and mere breaches of contract. I respectfully dissent.

---

[7] The court noted that no fraud or continuing scheme had been alleged, nor are there such allegations here.